UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. ANTON JOSEPH LAZZARO,
   a/k/a Tony Lazzaro,
   a/k/a Tony,

    Defendant.

Case No. 21-cr-173 (PJS/DTS)

**MOTION FOR PRELIMINARY ORDER OF FORFEITURE**

The United States of America, through Andrew M. Luger, United States Attorney for the District of Minnesota, and Craig Baune, Assistant United States Attorney, respectfully moves this Court for a Preliminary Order of Forfeiture pursuant to 18 U.S.C. § 1594(d) and Fed. R. Crim. P. 32.2.

## BACKGROUND

Aa Grand Jury in the District of Minnesota returned an Indictment against Defendant Anton Lazzaro on August 11, 2021, and a Superseding Indictment on March 15, 2023. ECF No. 327. The Superseding Indictment charged Lazzaro with Conspiracy to Commit Sex Trafficking and five counts of Sex Trafficking of a Minor in violation of 18 U.S.C. §§ 1591(a)(1), (b)(2), 1591(c) and 1594(c).[1] The Forfeiture Allegations provided notice that the United States sought forfeiture pursuant to 18 U.S.C. § 1594(d) of:

    (1)    Any property, real or personal, involved in, used or intended to be used to commit or to facilitate the commission of the offenses, and any property traceable to such property; and

---

[1] Count 7 of the Superseding Indictment was dropped before trial.

(2) Any property, real or personal, constituting or derived from, any proceeds obtained, directly or indirectly, as a result of the offenses, or any property traceable to such property.

The Superseding Indictment also identified certain property as directly forfeitable upon Lazzaro's conviction. *Id.* Lazzaro was tried before a jury, which found him guilty on all six Counts. ECF No. 346. Lazzaro waived the right to have a jury determination regarding forfeiture. Based upon the evidence introduced at trial, including the evidence set forth below, and the jury's guilty verdicts, the United States respectfully moves for a Preliminary Order of Forfeiture against Lazzaro for the following property:

a. the real property located at 201 11th Street South, #1920, Minneapolis, MN 55402;
b. a 2010 Ferrari Convertible, VIN ZFF65LJA9A0173846; and
c. a Blackberry cellphone with 32 GB SD Card with IMEI: 015103000107958.

(collectively "the Property").[2]

During trial, the United States introduced significant evidence concerning the Property and its involvement in the sex trafficking crimes for which Lazzaro was convicted. As is set forth in greater detail below, the Property's involvement and use in those crimes provides a sufficient nexus to require its forfeiture.

---

[2] The United States is no longer seeking forfeiture of items "c" and "e" in the Superseding Indictment: the Apple iPhone model A1662 cellphone seized from 201 11th Street South, #1920, Minneapolis, MN 55402 on December 15, 2020, and the Google Pixel 4A cellphone, Model G025 with IMEI 358118100229242. These items will be returned after they are no longer needed as evidence in connection with this case.

# ARGUMENT

## I. A PRELIMINARY ORDER OF FORFEITURE SHOULD BE ENTERED.

### A. Procedure

The United States seeks a Preliminary Order of Forfeiture pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure. Rule 32.2(b) provides:

(b) Entering a Preliminary Order of Forfeiture.

(1) Forfeiture Phase of the Trial.

> (A) Forfeiture Determinations. As soon as practical after a verdict or finding of guilty . . . on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute. If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense. If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay.
>
> (B) Evidence and Hearing. The court's determination may be based on evidence already in the record, including any written plea agreement, and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable. If the forfeiture is contested, on either party's request the court must conduct a hearing after the verdict or finding of guilty.

(2) Preliminary Order.

> (A) Contents of a Specific Order. If the court finds that property is subject to forfeiture, it must promptly enter a preliminary order of forfeiture . . . directing the forfeiture of specific property, and directing the forfeiture of any substitute property if the government has met the statutory criteria. The court must enter the order without regard to any third party's interest in the property. Determining whether a third party has such an interest must be deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c).

Criminal forfeiture is a part of sentencing; it is not a substantive element of the offense. *Libretti v. United States*, 516 U.S. 29, 38-39 (1995). As such, the preponderance of the evidence standard of proof applies. *United States v. Huber*, 462 F.3d 945, 949 (8th Cir. 2006); *see also, e.g., United States v. Peithman,* 917 F.3d 635, 651 (8th Cir. 2019); *United States v. Bieri*, 21 F.3d 819, 822 (8th Cir. 1994). Because the governing forfeiture statute includes compulsory terms, forfeiture is mandatory. *United States v. Williams,* 720 F.3d 674, 702 (8th Cir. 2013) (differentiating "shall" from "may" in forfeiture statutes).

Third-party claims to forfeitable property are not at issue at this stage of the forfeiture process, and "must be deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c)." Fed. R. Crim. P. 32.2(b)(2)(A). *See also* 21 U.S.C. § 853(n) (as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c). Accordingly, the Court must enter the preliminary order of forfeiture without consideration of third-party interests in the Property. *Id*.

### B. Forfeiture Authority

In sentencing a criminal defendant convicted of conspiracy to commit sex trafficking or substantive counts of sex trafficking of a minor, 18 U.S.C. § 1594(d) requires forfeiture to the United States of any property "involved in, used, or intended to be used to commit or to facilitate the commission of any violation of" §§ 1591 and 1594(c), "any property traceable to such property," and any property that constitutes or is derived from proceeds traceable to any violation of §§ 1591 and 1594(c).

The applicable statutory language reflects an amendment expanding the forfeiture authority to include property "involved in" relevant sex trafficking violations. *See* 18

U.S.C. § 1594 (as amended, 2015—Subsec. (d)(1). Pub. L. 114–22, § 105(a)(1)(A), substituted "that was involved in, used, or" for "that was used or".))

As was shown at trial and as is set forth below, the Property was all "involved in" Lazzaro's violations here, in addition to having been "used . . . to commit or facilitate the commission of" his sex trafficking violations. As a result, it is subject to forfeiture.

## II.   THE RELEVANT PROPERTIES

### A. The Real Property located at 201 11th Street South, #1920

Evidence introduced throughout trial demonstrates that this property ("the Real Property" or "Lazzaro's Condo") is subject to forfeiture because it was involved in, and was used to commit or facilitate the commission of Counts 1-6. Each of Lazzaro's victims testified that she engaged in commercial sex acts with Lazzaro at his condo. *See, e.g.,* Trial Tr. Vol. 1 at 216:3-219:12 (Emily); Vol. 3 at 561:1-565:12 (Molly's testimony concerning Emily); Vol. 3 at 673:20-674:10 (Ellie); Vol. 4 at 992:8-999:8 (Stella); Vol. 4 at 937:1-938:25 (Estella); Vol. 4 at 791:9-793:80 (Gabbie). The victims provided detailed descriptions of Lazzaro's Condo, including the gold ceiling tiles, photographs of prominent people, the views of downtown Minneapolis, and the mirror over the bed. Lazzaro confirmed significant portions of their testimony at trial through his testimony, which reiterated the centrality of his condo unit to each of the sex trafficking counts, including admissions that he transported each of the five victims to his condo and that he had sex with each minor victim. Trial Tr. Vol. 6 at 1410:7-15; 1418:11-24.

The above citations are just a small portion of the evidence admitted throughout trial, which showed that Lazzaro's Condo was central to each count of conviction.

### B. The 2010 Ferrari Convertible, VIN ZFF65LJA9A0173846

The 2010 Ferrari seized from Lazzaro is subject to forfeiture because it was involved in, and was used to commit or facilitate, Counts 1 and 4. Victim Emily (Victim C) testified that Lazzaro picked her up from a sleepover at a friend's house in his red Ferrari and drove her to his condo, where she became intoxicated drinking Everclear, had sex with Lazzaro, and spent the night. Trial Tr. Vol. 1 at 215:1-216:23. She then received an envelope full of cash from Lazzaro, among other things. *Id*. at 218:23-219:12. She identified the Ferrari shown in Government Exhibit J-16—which depicts the seized Ferrari—as the vehicle Lazzaro used to pick her up in that instance. *Id*. at 215:7-20. Lazzaro drove her back the next day in his leased Cadillac. *Id*. at 216:13-217:5

"Molly" confirmed that she remembered Emily telling her that Lazzaro had picked her up in a Ferrari and later returned with money. Trial Tr. Vol. 3 at 571:1-14.

### C. The Blackberry Cellphone with 32 GB SD Card with IMEI: 015103000107958

Throughout the conspiracy, Lazzaro communicated with coconspirator Gisela Castro Medina through electronic means, including communications that were involved in, and which facilitated, the conspiracy. Castro Medina testified that Lazzaro would typically use his Blackberry cellphone, and "He loved his Blackberry. He Really enjoyed it." Trial Tr. Vol. 2 at 351:5-23. Castro Medina testified that Exhibit J-20, a photo of Lazzaro holding stacks of cash, included an apparent reflection of Lazzaro's Blackberry cellphone. *Id.* Lazzaro testified that he gave Stella an iPhone because he typically used Blackberry phones. Trial Tr. Vol. 5 at 1316:4-14.

6

Examples of electronic communications that were part of the conspiracy included, among other things, Molly's testimony that Emily met Lazzaro through Snapchat, and that he was sending her pictures of money and asking if Emily and her friends (including Molly) wanted to come over. Trial Tr. Vol. 3, at 544 20-545:20. Victim Ellie testified that she had sex with Lazzaro for money after her sister Tatum and Lazzaro had "started talking back and forth on Snapchat about when she . . . [could] come down and meet with him." Trial Tr. Vol. 3 at 677: 9-16. Victim Stella testified that she talked with Lazzaro via Snapchat, through which he would chat and send her pictures of money, and after a while, his address. Trial Tr. Vol. 4 at 991-22-994:7. Victim Estella also testified that she arranged to meet with Lazzaro via Snapchat. *Id*. at 930:19-931:13. Victim Gabbie testified that she and Castro Medina connected with Lazzaro through Snapchat when they arranged her first visit to Lazzaro's Condo. Trial Tr. Vol. 4 at 790:17-791:10.

### III. THE GOVERNMENT HAS ESTABLISHED THE REQUIRED NEXUS BETWEEN THE PROPERTY AND LAZZARO'S CRIMES.

**A. Lazzaro's Condo is Subject to Forfeiture.**

With respect to the Real Property, the most analogous Eighth Circuit case is *United States v. Hull*, 606 F.3d 524, 527-28 (8th Cir. 2010), which affirmed the forfeiture of a residence and 19 acres of land upon which it sat because the defendant had distributed child pornography from that residence. Utilizing the dictionary definition of "use," the Court held that forfeiture of the entire property was appropriate because the house

> enabled Hull to establish a hardwired connection to the Internet, which allowed him to distribute the contraband. It also provided a secure place to store the images that he later distributed. Use of a computer in the privacy of the residence, rather than in a library,

7

coffee shop, or senior center, made it easier for Hull to conceal his crimes from public scrutiny.

*Id* at 528.

Here, the connection between the Real Property and the crime is far stronger. As set forth above and throughout trial, all of the relevant commercial sex acts occurred at Lazzaro's Condo. This, of course, was a necessity because his victims were minors whose homes did not afford them the privacy necessary to engage in commercial sex acts between a minor and adult man without raising suspicion, parental objections, or legal repercussions. As a result, they snuck out of slumber parties or otherwise hid these encounters from their parents when Lazzaro transported them to his condo. Lazzaro's Condo was central to the trial. Its involvement was anything but incidental or fortuitous.

Moreover, the applicable forfeiture provision, 18 U.S.C. § 1594(d), is more expansive than the statute at issue in *Hull* because § 1594(d) mandates forfeiture of property "involved in" sex trafficking crimes in addition to property used to commit or facilitate such crimes.

### B. The Ferrari is Subject to Forfeiture.

The nexus is also met for the Ferrari. As is set forth above, Lazzaro used this vehicle to transport Victim Emily to his condo, where she engaged in a commercial sex act with Lazzaro. The Ferrari, therefore, was "involved in" Counts 1 and 4.

The Ferrari also was used to commit or facilitate those counts. In the Eighth Circuit, "[t]he term 'facilitate' encompasses "activity making the prohibited conduct less difficult or more or less free from obstruction or hindrance." *United States v. Real Property Located*

8

*at 3234 Washington Avenue North, Minneapolis, Minn.*, 480 F.3d 841, 843 (8th Cir. 2007); *United States v. Huber*, 404 F.3d 1047, 1060 (8th Cir. 2005). Because the Ferrari was used to transport Victim Emily from a sleepover at Chloe's parents' home to the privacy of Lazzaro's Condo, where a commercial sex act ensued, it was used to facilitate Counts 1 and 4 because it made the illicit conduct freer from obstruction or hindrance.

It was also used to commit Counts 1 and 4, which include transportation as an element of the offense. 18 U.S.C. § 1591(a)(1) ("whoever knowingly in or affecting interstate or foreign commerce . . . recruits, entices, harbors, *transports*, . . . patronizes, or solicits by any means a person" . . .) (emphasis added). When Lazzaro used the Ferrari to transport Emily to his Condo for commercial sex, he used it to commit the violations charged in Counts 1 and 4. As a result, this statutory language also authorizes its forfeiture as property used to commit those crimes. *See Hull,* 606 F.3d at 527-28.

Because the Ferrari was involved in and was used to commit and to facilitate Counts 1 and 4, it is subject to forfeiture.

**C. The Blackberry is Subject to Forfeiture.**

Lastly, the Government has shown by a preponderance of the evidence that the Blackberry is subject to forfeiture for the same reasons as the other subject property. The most applicable precedent is *United States v. Unpradit,* in which the Eighth Circuit affirmed the forfeiture of cell phones a defendant used to communicate with people in Thailand and the United States to arrange to have women travel to the United States to perform commercial sex in violation of § 1591. 35 F.4th 615, 630 (8th Cir. 2022).

Here, there is testimony that Lazzaro used the Blackberry extensively to

communicate with his codefendant Castro Medina regarding, among other things, which girls he wanted for commercial sex. There was also testimony that he communicated with his victims directly, including via Snapchat, and that he sent at least one photo in which the Blackberry was shown along with stacks of cash. *See* Section II.C. above.

Although the Government was unable to search the contents of the Blackberry phone, trial testimony established that this was Lazzaro's primary phone during the most active part of the Conspiracy. This evidence includes Lazzaro's admission that he typically used Blackberry phones, Castro Medina's testimony that Lazzaro "loved" his Blackberry, and its appearance in the photo described above. This evidence is sufficient to establish, by a preponderance of the evidence, that Lazzaro's Blackberry was "involved in" and "used to facilitate" Count 1 of the Superseding Indictment.

### III. CONCLUSION

For the foregoing reasons, the United States moves this Court for a Preliminary Order of Forfeiture for the Property.

Respectfully submitted,

Dated: 7/6/2023

ANDREW M. LUGER
United States Attorney

*s/Craig Baune*
BY: CRAIG R. BAUNE
Assistant U.S. Attorney
Attorney ID No. 331727
600 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55415
Phone: 612-664-5600
Craig.baune@usdoj.gov