UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>1. ANTON JOSEPH LAZZARO,<br>　　a/k/a Tony Lazzaro,<br>　　a/k/a Tony,<br><br>　　　　　Defendant. | Case No. 21-cr-173 (PJS/DTS)<br><br>**RESPONSE TO DEFENDANT'S POSITION REGARDING SENTENCING** |

The United States respectfully submits this Response to Defendant Anton Lazzaro's Position Regarding Sentencing.

## FORFEITURE ISSUES

In its motion for Preliminary Order of Forfeiture, the Government explained how the three items of property were involved in, and used to commit or to facilitate, Lazzaro's crimes. In short, the Condo was the site of every commercial sex act at issue in this case, effectively hiding Lazzaro's sex trafficking from public view. The Ferrari was used to transport a minor victim from a slumber party to Lazzaro's Condo for commercial sex acts. And the Blackberry was used to communicate with Lazzaro's recruiter and his victims to identify and entice those victims, and to set up times, transportation and remuneration for commercial sex acts. The Government has already shown these items were substantially involved in Lazzaro's crimes. Their forfeiture is proper. Lazzaro's "substantial connection" objection should be denied.

Lazzaro's second argument is that the forfeiture is grossly disproportionate to his

crimes. This argument fails to acknowledge the gravity of Lazzaro's conduct, which weighs heavily against a finding of disproportionality. Eighth Circuit precedent, absent from Lazzaro's brief, makes it clear that the forfeiture order is far from excessive.

## I. EACH ASSET IS SUBSTANTIALLY CONNECTED TO LAZZARO'S CRIMES.

### A. The Substantial Connection Test

In *United States v. Hull,* the Eighth Circuit explained that the substantial connection requirement applies in criminal cases, but under that test the subject property "need not be 'indispensable' to the crime"—as Lazzaro's briefing suggests. 606 F.3d 524, 527-28 (8th Cir. 2010). The Court affirmed the forfeiture of a residence after finding the connection between it and Hull's child pornography distribution from computers in that home was "not merely an incidental or fortuitous relationship." *Id.*

### B. The Condo is Subject to Forfeiture

Lazzaro, incredibly, argues that there is no "substantial connection" between the Condo and his convictions for Sex Trafficking of a Minor. This argument is easily dispensed. Every commercial sex act happened at Lazzaro's Condo, which was at the center of the entire trial.

Lazzaro's legal argument is that this case is distinguishable from *Hull*, where the defendant distributed child pornography from computers within his home. 606 F.3d at 527-28. Lazzaro argues that he could more easily have used a different location, such as a hotel, for his commercial sex acts with minors than Hull could have for his child pornography distribution. ECF No. 438 at 22.

2

But that isn't the test. The holding of *Hull* is that the property "need not be 'indispensable' to the crime." By arguing that different locations[1] could have been used instead of his Condo, Lazzaro argues for precisely such an indispensability standard. He cites no supporting case law for his extraordinary interpretation, which would appear to limit forfeiture to circumstances when no other asset or location could plausibly have been used to commit the crime. The relevant question under 18 U.S.C. § 1594 is simply whether the property was involved in, or was used to commit or to facilitate, the violations. The substantial connection requirement is met when the connection between the property and the crime be more than incidental or fortuitous. *Id*. The Government is not required to show that the Condo was indispensable or that no other place in the world existed that could have housed these activities. *See, United States v. Heldeman,* 402 F.3d 220, 223 (1st Cir. 2005) (residence from which physician wrote illegal prescriptions served as a base of operations as surely as the place where a drug dealer stores and delivers drugs; it makes no difference that the offence could easily have been committed elsewhere).

A comparison of this case with Hull's use of his property shows that forfeiture of Lazzaro's Condo is not a close call. Hull's property housed and connected the instrumentalities (*i.e.,* the computers) that Hull used to commit his crimes. It facilitated, therefore, his distribution of child pornography by providing a secure location for his illicit computer use. Here, the charged commercial sex acts occurred at the Condo. It was,

---

[1] Regardless, many hotels have anti-sex trafficking procedures in place to report this type of activities. As in *Hull,* the use of the Condo here "avoided rental costs and the attention that would be attracted by frequent visits to local motels." *Id* at 528, n.3.

therefore "used to commit" his crimes in addition to facilitating them by hiding his sexual encounters with minors from the public eye.

Lazzaro's need for the privacy his Condo afforded him was greater than Hull's because Lazzaro's crimes involved commercial sex acts with underage girls, some of whom were intoxicated. They could be heard or seen if they were in a less private place. And privacy was essential in light of the obvious illegality and social opprobrium surrounding those activities. Lazzaro argues that meeting a victim at a mall one time weighs against the Condo's involvement. Def. Memo at 22. But the commercial sex acts that followed obviously did not take place at the mall; instead they went to Lazzaro's Condo.

In short, Lazzaro's Condo was central to his sex trafficking activity. Its involvement could hardly be more substantial. The required nexus is easily met.

### C. The Ferrari is Subject to Forfeiture

Lazzaro argues that the Ferrari cannot be forfeited because it was used only once to transport a minor from a slumber party to his Condo so they could engage in a commercial sex act. Lazzaro's argument boils down to a claim that multiple uses of the vehicle are needed for it to be forfeited. But there is no such "multiple use" requirement. One use can suffice. Lazzaro cites no case law or statute establishing a single-use exception.

In *United States v. Premises Known As 3639-2nd Street, N.E.,* 869 F.2d 1093, 1095-96 (8th Cir. 1989), the Eighth Circuit held that a single cocaine sale sufficed to satisfy the substantial connection requirement for the forfeiture of a residence. The panel found there was "no requirement of a continuing business or operation. Rather, we believe that if persons make real property available as a situs for an illegal drug transaction, it is

forfeitable, as the forfeiture statute requires only 'a violation' of the title." *Id.* at 1096 (internal citations omitted). The Court further noted that "the house as a structure itself was actually used in the commission of the offense." *Id.* at 1096-97.[2] The use of the house to facilitate the sale of narcotics distinguished it from a vehicle used to transport materials used to roof a shed located near a marijuana field, which was an insufficient connection. *Id,* (citing *United States v. One 1976 Ford F–150 Pick–Up,* 769 F.2d 525, 527 (8th Cir.1985)). The same rule applies to vehicles. *See United States v. One 1980 Red Ferrari,* 875 F.2d 186 (8th Cir. 1989) (Ferrari subject to forfeiture after defendant admitted to possessing cocaine while driving it).

The connection is even stronger when victims, rather than drugs, are transported. In a case concerning Mann Act violations, each of the three vehicles a claimant used to transport a victim across state lines for sex acts (each vehicle was used once) was subject to forfeiture. *United States v. 2001 Lexus LS430*, 799 F. Supp. 2d 599, 607 (E.D. Va. 2010) ("The Government does allege that Mr. Jackson used his vehicles to transport her to his apartment, where they engaged in illicit sexual conduct. . . . such an allegation is sufficient to merit forfeiture and establish a substantial connection between Mr. Jackson's vehicles and his offense."); *see also United States v. One Toyota Landcruiser, VIN TEBU11F670023522,* 824 F. Supp.2d 1369, 1377-78 (N.D. Ga, 2011).

Here, Lazzaro drove the Ferrari to pick up victim Emily, whom he transported to

---

[2] The Court also held that the proportionality of the forfeiture was a distinct inquiry from the substantial connection (*i.e.*, the nexus) requirement. It addressed only the nexus requirement in that decision. This briefing follows that distinction.

5

his Condo for commercial sex acts. Because transportation is an element of Counts 1 and 4, the Ferrari was plainly used to commit those Counts. It also facilitated those counts by avoiding challenges of arranging third-party transportation, and by making the commercial sex acts freer from obstruction by moving the minor victim from the home of one of her friend's parents to Lazzaro's Condo, where no parents would stop or report his conduct.

Lazzaro's emphasis on a single use only highlights how extensive his crimes were. That they occurred repeatedly, against multiple victims over an extended time period does not insulate the Ferrari or mitigate its use. One use is enough. When Lazzaro used his Ferrari to transport Emily to his Condo for commercial sex acts, it became substantially connected to Counts 1 and 4.

### D. The Blackberry is Subject to Forfeiture

Lazzaro argues that the Government did not show that the Blackberry was connected to his crimes because it was unable to crack the password to complete a search of its contents. But the Government showed sufficient evidence in its motion and throughout the trial that this phone was involved in, and used to commit or to facilitate, Lazzaro's crimes. Trial was replete with evidence of electronic communications between Lazzaro and his recruiter, Gisela Castro Medina, about which girls he wanted for commercial sex. *See* ECF No. 411 at 6-7. There was similar evidence about his electronic communications with the victims and others in furtherance of his sex trafficking activities. *Id*. Snapchat and other electronic communications were ubiquitous.

The relevant question, therefore, is whether this Blackberry was used for those communications. As is set forth in the Government's initial motion, Castro Medina

identified this Blackberry as Lazzaro's primary phone, and it also appears in a photo of a shirtless, underwear-clad Lazzaro with stacks of case that was sent to victims. *Id.* Both she and Lazzaro testified that he preferred Blackberry phones, and this one was photographed and identified as his primary phone. This is sufficient evidence to show by a preponderance of the evidence that the Blackberry was involved in, and used to commit or facilitate, Lazzaro's sex trafficking.[3]

## II. LAZZARO HAS NOT SHOWN DISPROPORTIONALITY

### A. The Applicable Test

Lazzaro next asserts that the forfeiture of the Condo and the Ferrari would be grossly disproportionate to the severity of his offenses. The disproportionality analysis concerns whether the forfeiture is prohibited under the Eighth Amendment. "'The touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish.'" *United States v. Dodge Caravan Grand SE/Sport Van*, 387 F.3d 758, 762 (8th Cir. 2004) ("*Dodge Caravan Grand*") (quoting *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)).

There are two steps to determining disproportionality in the Eight Circuit. First, "the defendant has the initial burden of making a prima facia showing of 'gross disproportionality.'" *United States v. Bieri*, 68 F.3d 232, 236 (8th Cir. 1995) (citing *United*

---

[3] Lazzaro questions why other phones were not sought for forfeiture. Although no explanation is required, the evidence showed that this was the phone he primarily used for the duration of the conspiracy; therefore, it would have been the phone he used to send most of the electronic communications sent in furtherance of his crimes.

*States v. Alexander*, 32 F.3d 1231, 1236 (8th Cir. 1994)); *Dodge Caravan Grand*, 387 F.3d at 763; *United States v. Viloski*, 814 F.3d 104 (2nd Cir. 2016) (burden is on the defendant to show a forfeiture is grossly disproportional). "Second, the Eighth Amendment demands that a constitutionally cognizable disproportionality reach such a level of excessiveness that in justice the punishment is more criminal than the crime." *Id*. (Cleaned up.)

### B. Step 1: The Forfeiture is Not Grossly Disproportionate

With respect to the first step, "Factors a court may consider in determining if a fine is disproportionate include the extent and duration of the criminal conduct, the gravity of the offense in comparison to the severity of the criminal sanction, and the value of the forfeited property." *United States v. $63,530.00*, 781 F.3d 949, 957-58 (8th Cir. 2015); *see also, Bieri*, 68 F.3d at 236 (holding that a court should consider those same factors). This list is not exhaustive; other factors include "an assessment of the personal benefit reaped by the defendant, the defendant's motive and culpability, . . . whether the Act authorizing forfeiture is aimed at the underlying criminal act giving rise to the forfeiture, [and] the harm caused by the criminal wrongdoer's acts." *Dodge Caravan Grand*, 387 F.3d at 763.

Lazzaro's disproportionality argument fails this step. The gravity of his crimes weighs too heavily against him. Lazzaro was convicted of six counts of Sex Trafficking of a Minor. His five victims were severely harmed by his conduct, as is described in detail in the Government's Sentencing Memorandum. ECF No. 436. His sentencing guidelines call for a presumptive sentence of life imprisonment. PSR ¶ 136. A significant forfeiture is entirely proper and not disproportionate to the severity of these crimes. *See Dodge Caravan Grand*, 387 F.3d at 763.

The extent and duration of the criminal conduct also support the forfeiture. Lazzaro's conspiracy lasted for about nine months, during which time the five victims were recruited and transported (often repeatedly) to his Condo for commercial sex. Lazzaro's motive and culpability similarly support a significant forfeiture here: he was the leader of this enterprise; all of this existed for his benefit.[4] *See id.*

The Court weighs the value of the property to be forfeited against the factors listed above. Although Lazzaro asserts his Condo is worth $1.5 million based on the listing price of a different unit, that number is implausibly high for Lazzaro's.[5] The PSR estimates it to be worth $1,000,000. Moreover, Lazzaro ignores the mortgage against his Condo. As the PSR notes, the Condo was subject to a $787,500 mortgage loan when Lazzaro bought it in November 2018. PSR, ¶ 130. It is likely, therefore, that the Condo has equity of less than $300,000.[6] *See Hull,* 606 F.3d at 530 (considering the property's equity for the purposes

---

[4] Lazzaro argues that the "alleged harm to the victims was minimal" based on the cost of therapy sessions to date. ECF No. 438 at 22. There is no reason to ignore the substantially higher amount of expected future therapy. Regardless, the expected restitution amount is irrelevant to the forfeiture, as they are separate aspects of a defendant's sentence. *E.g., United States v. Adetiloye*, 716 F.3d 1030, 1041 (8th Cir. 2013).

[5] The $1.5 million asking price is the highest of several available condo units currently listed for sale at the Ivy Tower. The second-highest-priced unit is $1,050,000. Both of those units are three-bedroom/three-bathroom units, unlike Lazzaro's two-bedroom/two-bathroom unit. The highest asking price of a two-bedroom/two-bathroom unit is $735,000, according to the linked website, as of August 2, 2023. https://www.yoururbanlife.com/ivy-hotel-condos-minneapolis.php. A unit on the same floor as Lazzaro's, No. 1930, is listed at $635,000.

[6] Documents obtained from Caliber Home Loans in this matter show that Lazzaro purchased the Condo on or about November 9, 2018 on a 30-year note, with a yearly interest rate 5.375%. Declaration of Sean Stead, Ex. B. An amortization table shows that Lazzaro would owe $731,475.88 as of August 1, 2023 if he made all scheduled payments as of that date. *Id.*, Ex. C. An appraisal from that same file states that the Condo was a two-bedroom, two-bathroom, 1,920 square-foot unit. *Id.*, Ex. D at 3.

of proportionality). And Lazzaro asserts he transferred half ownership the Condo to his girlfriend. Although the severity of his crimes would support forfeiture of a $1.5 million condo, Lazzaro's is worth far less than that.

The same factors support the forfeiture of the Ferrari,[7] which was used in the same conspiracy and one other count. Because the crimes that support the forfeiture of this vehicle are of the same severity as those supporting the forfeiture of the Condo, the Ferrari's forfeiture easily passes muster. That is because "[t]he proportionality analysis compares the amount of forfeiture to 'the gravity of the offense.'" *United States v. Beltramea*, 160 F. Supp. 3d 1119, 1131 (N.D. Iowa 2016) (quoting *Bajakajian*, 524 U.S. at 334, 118 S.Ct. 2028), *aff'd*, 849 F.3d 753 (8th Cir. 2017). For example, in the money laundering context, "it is Defendant's money laundering—the offense Defendant committed—that is relevant to the proportionality analysis, and not the degree that the money laundering impacted the property forfeited." *Id.* Applying that here, the gravity of Lazzaro's offenses is not disproportionate to the value of the Ferrari and the Condo.

The permissible fine range also weighs against Lazzaro's disproportionality argument. "[I]f the value of the property forfeited is within or near the permissible range of fines using the sentencing guidelines, the forfeiture almost certainly is not excessive." *Dodge Caravan Grand*, 387 F.3d at 763. Lazzaro's guideline fine range is up to $500,000

---

[7] Lazzaro bizarrely accuses the United States of "seeking to evade the proportionality issue by alleging that '[t]he value of the Ferrari could not be determined, …' PSR ¶ 134." ECF No. 438 at 19, n.5. As his counsel should know, the United States does not draft the PSR. Probation does. The United States does not contest that the value of the Ferrari is difficult to establish or that it could plausibly be worth $100,000.

and the statutory fine range is $1.5 million, or $250,000 per count. PSR ¶¶ 140, 143. Lazzaro has not shown that the property's value exceeds either of these ranges. But even if his property were more valuable, his conduct and the harm it caused would justify exceeding the guideline range. *See, United States v. Sigillito,* 899 F.Supp.2d 850, 867-68 (E.D. Mo. 2012) ($51,568,087.17 forfeiture order was not grossly disproportionate in a fraud scheme, notwithstanding fine guideline range of $50,000-$500,000).

This case can be contrasted with *Bajakajian*, 524 U.S. 321, where the Court determined that the forfeiture of $357,144 was excessive in relation to the severity of the defendant's crime, which was the failure to report exported currency. Unlike Lazzaro's sex trafficking crime, Bajakajian's was "solely a reporting offense" that was "unrelated to any other illegal activities." *Id* at 337. The harm it caused was "minimal," and Bajakajian "did not fall into the class of persons for whom the statute was principally designed." *Id.* at 338. In contrast, Lazzaro, who hired a recruiter to find him 15 and 16-year-old girls, preferably "broken girls," falls squarely into the class of persons for whom the sex trafficking of a minor statute was designed. Perhaps most tellingly, the maximum sentence Bajakajian faced under the sentencing guidelines was six months. Lazzaro's presumptive sentence is life. *Id.*

### C. Step Two: The Forfeiture is Not a Constitutionally Cognizable Disproportionality

"If the claimant can make [the above] showing, the court considers whether the disproportionality reach[es] such a level of excessiveness that in justice the punishment is more criminal than the crime." *Dodge Caravan Grand*, 387 F.3d at 763 (second alteration

11

in original); *Bieri*, 68 F.3d at 236. Because Lazzaro cannot meet the first step, the Court does not need to address this second step. If it does, many of the same factors again weigh against Lazzaro. His crimes are severe. His recommended sentence is life. He caused massive harm to his victims. He created this scheme for his own gratification. The forfeiture is not excessive and therefore does not approach a level of excessiveness that makes the punishment more criminal than Lazzaro's crimes.

### III. LAZZARO'S REMAINING ARGUMENTS LACK MERIT OR ARE IRRELEVANT

#### A. Third-Party Claims are Not at Issue at the Preliminary Order of Forfeiture Stage

Lazzaro argues the Condo should not be forfeited because he transferred a one-half interest in it to his girlfriend after he was indicted. ECF No. 438 at 22. This argument is procedurally improper under Rule 32.2(b)(2), which states "[t]he court must enter the [preliminary order of forfeiture] <u>without regard to any third party's interest in the property</u>. Determining whether a third party has such an interest must be deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c)." (Emphasis added.)

Case law confirms criminal forfeiture is a two-step process: first, the defendant's interest is forfeited; second, third-party claims are addressed in an ancillary proceeding.

> A criminal judgment of conviction that includes a forfeiture count conclusively determines the property rights as between the government and the criminal defendant, but the government does not receive clear title to the forfeited property as against the rest of the world until the government complies with the requirements of § 853(n). . . A § 853(n) ancillary proceeding is the only avenue by which a third-party claimant may seek to assert an interest in property that has been included in an indictment alleging that the property is subject to forfeiture.

12

*United States v. Puig*, 419 F.3d 700, 703 (8th Cir. 2005); *see also United States v. Johnson*, 956 F.3d 510, 520 (8th Cir. 2020) (quoting Rule 32.2(c)(2), holding "The defendant may not object to the entry of the final order [of forfeiture] on the ground that the property belongs, in whole or in part, to a ... third party.").

Lazzaro's cited cases involve either third-party claims in ancillary proceedings or civil forfeiture cases. ECF No. 438 at 23. If Ms. Costal files a claim, it will be properly addressed in an ancillary proceeding. But her interest, if any, is not yet before the Court.

### B. Section 1594 Provides the Substantive Forfeiture Authority

The arguments in Lazzaro's first two footnotes are not critical to the resolution of this motion but are addressed here to avoid any potential confusion that may otherwise result. Lazzaro appears to assert that 21 U.S.C. § 853 governs this forfeiture. ECF No. 438 at 11, n.1. It is unclear precisely what he is arguing, as he seems to admit that 18 U.S.C. § 1594(d) also applies. There should be no confusion, however, because § 1594(d) provides the substantive forfeiture authority—meaning that is statute which governs what property is directly forfeitable. The procedural mechanisms and substitute asset provisions of 21 U.S.C. § 853 are incorporated and apply through operation of 28 U.S.C. § 2461(c), but Lazzaro identifies no failure to comply with those procedural provisions. If, however, Lazzaro is arguing that the substantive forfeiture authority is provided by the Controlled Substantive Act rather than § 1594(d), his argument is plainly wrong.

Lazzaro also asserts that the United States has "abandoned" its contention that property "involved in" sex trafficking is different than facilitating property. ECF No. 438

13

at 11, n.2. The Government has never abandoned that argument, and such an interpretation would render the 2015 amendment to § 1594(d), which added the words "involved in" to the delineation of what property subject to forfeiture, a nullity. Although property "involved in" sex trafficking includes facilitating property, it is not limited to only such property. The Court does not need to address any fine distinctions between these categories of forfeitable property here, however, because the subject property was also used to commit, and to facilitate, Lazzaro's crimes.[8]

### C. The Government Does Not Request an Evidentiary Hearing for Forfeiture

As is authorized by Rule 32.2(b)(1)(B), the Government relies upon evidence and information that has already been submitted to the Court and the limited supplementation submitted herewith. No evidentiary hearing on forfeiture is requested by the Government.

## RESTITUTION ISSUES

### I. THE GOVERNMENT HAS MET ITS BURDEN TO PROVE RESTITUTION

Congress enacted the Trafficking Victims Protection Act of 2000 (TVPA) to provide a comprehensive set of laws to combat human trafficking on the federal level. In relevant part, the Act criminalized commercial sex trafficking of minors. 18 U.S.C. § 1591. The TVPA has three objectives: (1) prevention of human trafficking; (2) prosecution of

---

[8] Lazzaro, citing case law concerning property involved in money laundering transactions, contends that property "involved in" a crime goes no further than facilitating property. ECF No. 438 at 11, n.2. Sex trafficking offenses, however, have very different elements than money laundering violations, and it is doubtful that a test created to determine what property is involved in money a laundering transaction would apply here without modification. But that distinction is not necessary for the resolution of this motion because the property here was also used to commit and to facilitate Lazzaro's crimes.

14

traffickers; and (3) protection of the victims.  See Pub.L. No. 106-386, § 102(a), 114 Stat. 1488 (2000), codified as amended in 22 U.S.C. § 7101(a).  The TVPA also created one of the most expansive mandatory restitution schemes under federal law, in an acknowledgment that: "[Full restitution] is critical to restoring [the trafficking] victim[s]' dignity, helping them gain power back from their exploiters who took advantage of their hope for a better life.  [It] . . . attack[s] the greed of the trafficker and the idea of a human being as a commodity. It is a way to ensure that victims receive access to justice." *United States v. Sabhani*, 599 F.3d 215, 259–60 (2d Cir. 2010). Indeed, holding offenders financially accountable to their victims is a key provision of the TVPA.

The federal code provides that the Court "shall order restitution for any [trafficking] offense under this chapter." 18 U.S.C. § 1593(a). The restitution order "shall direct the defendant to pay the victim . . . the full amount of the victim's losses." In determining the full amount of the victim's losses, the Court shall include any costs incurred by the victim for (A) medical services relating to physical, psychiatric, or psychological care; (B) physical and occupational therapy or rehabilitation; (C) necessary transportation, temporary housing, and child care expenses; (D) lost income; (E) attorney's fees, as well as other costs incurred; and (F) any other losses suffered by the victim as a proximate result of the offense. 18 U.S.C. § 1593(b)(3) (incorporating by reference 18 U.S.C. § 2259(b)(3)).

Although this statutory language is circumscribed by a requirement of a causal connection between the offense of conviction and the victim's harm, appellate courts have not imposed a requirement of causation approaching mathematical precision. *See, e.g., United States v. Doe*, 488 F.3d 1154, 1159–60 (9th Cir. 2007). It is not necessary for the

15

government to prove defendant's conduct was the "sole and total cause of a victim's loss"; instead, district courts should be guided by a "rule of reasonableness." *Id.* 488 F.3d at 1160 (approving estimations of loss based on facts in the record).

The government does, however, bear a burden by a preponderance of the evidence to prove the amount of restitution. 18 U.S.C. § 1593(b)(2) ("an order of restitution under this section shall be issued and enforced in accordance with section 3664 . . . ."); 18 U.S.C. § 3664(e) ("Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the government."). "The preponderance standard should be applied in a practical, common-sense way." *See United States v. Savoie,* 985 F.2d 612, 617 (1st Cir. 1993). Further, the Court shall order restitution to the victim in the full amount of her loss without any consideration of the economic circumstances of the defendant. 18 U.S.C. § 3664(f)(1)(A).

Lazzaro appears to object to an order of restitution, but he cites no facts or law indicating why the victims are not entitled to it and why the government has not met its limited burden of proof. This Court is familiar with the facts of this case having presided over a two-week trial, taken the guilty plea of co-defendant Gisela Castro Medina, heard testimony from all named victims at trial and received impact statements from victims and parents for sentencing, and heard the testimony of forensic pediatrician Sharon Cooper, M.D., who detailed the impacts on a victim's physical and mental health during her trial testimony. In addition, the victims have submitted signed declarations of losses along with documentation of losses. Those declarations are attached to the declaration of Emily

Polachek. That declaration is filed under seal pursuant to 18 U.S.C. § 3509(d).

The Eighth Circuit has found a district court's reliance on victim testimony in calculating provable loss is reasonable. *United States v. Emmert*, 825 F.3d 906, 911 (8th Cir. 2016). Moreover, the government may meet its burden of proof by introducing a sworn statement from the victim outlining the losses sustained as a result of the crime. *See Adetiloye,* 716 F.3d at 1039.

## II. NO EVIDENTIARY HEARING IS NECESSARY

Based on the full record before this Court, including trial testimony, sworn declarations of the victims, documentation of losses, and the victim impact statements, the government has met its burden. No evidentiary hearing is needed. The submitted requests for restitution are compensable under 18 U.S.C. §§ 1593, 2259(b)(3).

Respectfully submitted,

Dated:  August 4, 2023

ANDREW M. LUGER
United States Attorney

 *s/Craig Baune*
BY: CRAIG R. BAUNE
Assistant U.S. Attorney
Attorney ID No. 331727

LAURA M. PROVINZINO
Assistant U.S. Attorney
Attorney ID No. 0329691

EMILY A. POLACHEK
Assistant U.S. Attorney

MELINDA A. WILLIAMS
Assistant U.S. Attorney